# Delaware County National Bank et al., Plffs. in Err., *v.* William E. Headley, by His Next Friend.

A father may so manumit his minor son as to authorize him to receive the compensation for his labor, and control and enjoy the same.

Whether he has done so in a given case is a question for the jury.

A suit by such minor son to recover from the bank where it had been deposited, money which he had earned, but which his father had forbidden the bank to return to him, is properly brought in the name of the minor's next friend.

One who has voluntarily procured himself to be made a party to a suit cannot afterwards object that bringing him in was irregular.

(Decided February 23, 1886.)

Error to the Common Pleas of Delaware County to review a judgment for plaintiff in an action of assumpsit.  Affirmed.

This action was brought by J. N. Shanafelt as next friend of William E. Headley, against the Delaware County National Bank, to recover a sum of money that Headley had deposited with the bank.  Headley was a minor, and the bank had been notified not to pay the money to him, by James M. Headley, his father.  The father subsequently became an intervening defendant.

The court below charged the jury as follows:

Charge by CLAYTON, P. J.:  As the record stands, this is a suit between the plaintiff, William E. Headley, and the Delaware County National Bank.  In reality the bank is but a stakeholder, and the suit is between the plaintiff and his father, James M. Headley.

The case is, as far as you are concerned, a very clear one, and I have no doubt that you will dispose of it without much difficulty.  The single question for you to decide is whether the father, to use the language of the law, has emancipated his son; that is to say, whether he has given to his son his consent that the son shall earn his own money and dispense his own earnings as he thinks proper.  The law permits the father to do this, and if he once does it and the son earns money afterwards, the father cannot then withdraw his consent to the emancipation he has granted.

The relation of parent, as established by law, depends largely upon the good of the child, much more than upon the good of the parent. The object of the law in giving the parent the control of the child is that the child may be properly trained and taught lessons of economy, so that he may become a good citizen and able to earn his own living. Where the father is in limited circumstances, poor, unable to provide for himself; he has the undoubted right to have the services of his children; but, where the father is able to provide for himself, it is no uncommon thing for the parent to give his consent for the child to go into business and earn and dispense his own money. The whole question for you is whether this parent did give his consent that his son should earn his own money and have the control of his own earnings. If he did, then your verdict ought to be for the plaintiff; if he did not, then the money belongs to the defendant. The rule of law where there has been no emancipation gives to the parent all the earnings of his child, and this relation continues until the child is twenty-one years of age; after twenty-one, the son becomes his own man; and, as I before stated, the law permits the father to emancipate the child and permit him to earn his own money before he is twenty-one. The law does not require absolute proof of emancipation, but what is technically called satisfactory evidence of it; that is, it must satisfy the jury that the father intended to emancipate the son, and that the son so understood it when he earned the money. Apply the circumstances of the case to this rule, and, if you find that the father consented that the son should have control of his money and be the dispenser of his own earnings, and under that agreement he earned this money, then it is his, and the father cannot interfere with the holder or depositee of this money. The evidence is not very extensive, nor very voluminous. It is, that the son commenced working for the firm, of which his father was a member, several years ago. That his name was upon the pay rolls, and that every week the money which he earned was paid to him every week just as in the case of any other employee of the firm; and that a certain amount was given to his mother, by him, according to the family arrangement or understanding. It appears from the testimony which you have heard, that he paid to her different sums at different times; varying the amount by the wages he got; at one time he gave in $6 a week and at another time $9 were required to be

paid to his mother.    You have heard the evidence of the young man.    He has told you that he bought no clothing with the money he had earned, but that each month he put $2 into the building association, and that from it he realized pretty near $132, the balance of his savings over the amount he paid each week to his mother.    The evidence is that, when this money was put in the bank it was deposited in the name of the son. The father says that he was aware that the building association stock was entered in his son's name; and if he was, then it is strong evidence that it was intended for the son.    If he had meant to claim it as his own, he would most probably have had it entered in his own name.    But the evidence is that he knew it was entered in his son's name, and that the son was paying for it out of the wages he earned at the rate of $2 a month; in all, it amounted to $132, and the presumption of law is that the stock was the son's.    However, the question is entirely for you, it is for you to say; if you conclude that the understanding was that the son should be but a trustee for the father, then the money belongs to the father, and he can take it, even though it be entered in the son's name; but if you find on the other hand that the money was entered in the son's name, and that the father assented to it, and that the son should pay $2 a month out of his wages into the building association, then the money belongs to the son and the father cannot interfere with it in any way, even though the son be yet a minor.    He tells you that he put in the bank $132; $131.75 of that deposit he says was from the sale of the building association stock, and the balance he took from his pocket and added to it to make up the solid amount of $132.    In other words, if you give credence to the testimony of the young man, believing what he has told you to be true, the money is his and the father has no right to it, and your verdict should be accordingly.    But if you find that the father did withhold giving his assent to the emancipation of the boy, then the mere fact that he was paid by the firm in the same way as the other hands is not enough.    Let me repeat, if there was an understanding between them that the son should have the balance above the $7 a week paid by the family arrangement to the mother, then the money is his, and not the father's.    The law is correctly expressed in the language of our supreme court, which says: "The exercise of parental authority . . . personal success in life."    That is the first object in every parent's

thoughts, how his son shall be taught habits of thrift, industry, and saving; how he shall become so accustomed to business as to be able to earn an honest livelihood, and that he may be an honor to the community.    Nothing is more satisfactory to a father than to find his son exhibiting such a disposition; that is the object of the rule of the law which gives the parent such unlimited authority over his children.    "Children, therefore, are not mere servants."    He is not to work as a servant, but as a child; there may be times when it may become the duty of the child to work for the subsistence of the parents where they are unable to earn a living for themselves, and then, no matter whether the son is twenty-one, or fifty, or even sixty, years old, if he has a poor father who is unable to make a living, that duty would devolve upon the child.    The duty still continues; it does not in that case end with emancipation.    It continues until the death of the father.    In the case to which I refer the son was a minor of one of the members of the firm; that is the case here, and the account for his services was kept in the books of the firm in his own name, and he received all that was credited thereto; there was no credit to the father, nor did he claim the benefit of it.    The firm made an assignment for the benefit of creditors, and the son continued to serve the firm.    The question that arose was, whether these services did not belong to the father.    In that case it would be for the father's interest that the money go to himself to help pay off his liabilities, but the court held that the mere fact that the books of the firm showed that he had entered into the service of the firm of which his father was a member, and that the wages were paid to him were not enough to make them belong to the father; the father had never claimed them, and even though he lived under the same roof, it made no difference.    So I say to you, that if you find that there was an emancipation, the boy was entitled to the money, if there was none, the father was entitled to it; the word "emancipation" meaning the consent of the father that the child shall have control over his own earnings.    With this I leave the case with you, after answering the points which have been submitted to me by counsel.

Verdict and judgment passed for plaintiff, and the defendants appealed.

*O. B. Dickinson,* for plaintiffs in error.—It has been deter-

mined in this state, by positive decision, that the mere fact of the contract of hiring having been made by the parent, deprives the infant of the right to maintain an action for the value of his services in his own name, even where the father consents to it, and that any arrangement made between a father and his child as to the disposition of his earnings is revocable at the father's pleasure.    Kauffelt v. Moderwell, 21 Pa. 222.

That there may be an emancipation where the child lives under the same roof with the parents is admitted.    McCloskey v. Cyphert, 27 Pa. 225 ; Beaver v. Bare, 14 W. N. C. 53.

There was no warrant for the court saying to the jury, that this fact "made no difference."

*J. N. Shanafelt,* for defendant in error.—While the father is entitled to the services of the son, while under age, he may agree to permit him to control either a part or the whole of the compensation for his labor without entirely manumitting him from all further parental control.    The extra exertion of the son to accumulate property under such a promise, and the interest of every father to inculcate habits of thrift in his son are considerations sufficient to sustain such a contract.    If a father permits his minor son to contract for himself and receive his own wages, after they are earned he cannot retract such consent. Torrens v. Campbell, 74 Pa. 470 ; Kauffelt v. Moderwell, 21 Pa. 224 ; Galbraith v. Black, 4 Serg. & R. 207 ; Shute v. Dorr, 5 Wend. 204 ; Snediker v. Everingham, 27 N. J. L. 143 ; Gale v. Parrot, 1 N. H. 28 ; United States v. Mertz, 2 Watts, 406 ; Corey v. Corey, 19 Pick. 29, 31 Am. Dec. 117.

Notice to the debtor not to pay the son will not revoke the son's right.    Morse v. Welton, 6 Conn. 547, 16 Am. Dec. 73.

The right of a parent to the personal custody and services of a child is simply incidental to the duty of discipline and direction.    Emancipation may be as perfect when they live together as if they were separated.    Beaver v. Bare, 14 W. N. C. 53 ; McCloskey v. Cyphert, 27 Pa. 220 ; Rush v. Vought, 55 Pa. 437, 93 Am. Dec. 769.

Slight circumstances will sustain a finding of emancipation. Campbell v. Campbell, 11 N. J. Eq. 272 ; Johnson v. Gibson, 4 E. D. Smith, 231 ; Dick v. Grissom, Freem. Ch. (Miss.) 428 ; Boobier v. Boobier, 39 Me. 406.

If a child is emancipated, and such child by industry accumu-

lates money, the money is his money, and not the father's. Farrell v. Farrell, 3 Houst. (Del.) 639.

Evidence that a minor is in the habit of doing business on his own account and in his own name, and of becoming responsible for his own supplies, is competent to show emancipation. Lackman v. Wood, 25 Cal. 147.

We go so far as to say that where a minor son makes a contract for his services on his own account, and the father knows of it and makes no objection, there is an implied assent that the son shall have his earnings. Whiting v. Earle, 3 Pick. 201, 15 Am. Dec. 207.

PER CURIAM:

That a father may so manumit his minor son as to authorize him to receive the compensation for his labor, and control and enjoy the same is a well-recognized law in this state. Whether he had so manumitted his son in this case was a question of fact. The evidence tending to prove it was amply sufficient to submit to the jury. The suit was properly brought in the name of the minor's next friend. The irregularity of the father having his name added to the record as a codefendant was his voluntary act, and his objection thereto cannot now be considered.

Judgment affirmed.